UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ALVIN BALL #524942 | CIVIL ACTION NO. 19-cv-613 SEC P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JAMES M LEBLANC ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Alvin Ball ("Plaintiff") is a self-represented inmate who alleges that officials at the David Wade Correctional Center ("DWCC") violated his civil rights when Col. Lonnie Nail and Major Jeremy Wallace sprayed him with a chemical agent. Plaintiff also faults Warden Jerry Goodwin and Secretary James LeBlanc for failing to prevent the use of force or take appropriate corrective action.

Before the court is Defendants' Motion for Summary Judgment (Doc. 38) that attacks the claims on the merits, asserts qualified immunity, and raises an exhaustion defense with respect to some claims. Plaintiff did not file a response to the motion. For the reasons that follow, it is recommended that the motion for summary judgment be granted and that all claims be dismissed.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under

governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Excessive Force Claim**

    **A. Plaintiff's Allegations**

Plaintiff alleged in his complaint that he arrived at DWCC in July 2016. When he filed his complaint in February 2019, he alleged that he had been on extended lockdown since August 2017. He alleged that he had developed a mental illness while incarcerated and that, on May 14, 2018, he was housed in N4 in a suicide cell when Captain Huey told him that he was being moved to another cell. Plaintiff protested being moved without first seeing the mental health department, but Huey allegedly told him to shut up or get sprayed down. Plaintiff was then moved to another cell in N4.

Plaintiff alleged that less than an hour later, Col. Nail, Major Wallace, and other officers came on the tier screaming and threatening inmates with chemical agents. When Nail came to Plaintiff's cell, Plaintiff tried to ask Nail why he was moved. Nail allegedly

responded by yelling at Plaintiff and, without warning, sprayed Plaintiff in the face with a chemical agent. Plaintiff contended that, about six minutes later, Major Wallace, without warning, also sprayed Plaintiff with a chemical agent. Plaintiff alleged that he was on suicide watch in a paper gown at the time, and he was not a threat to anyone.

### B. Defendants' Summary Judgment Evidence

Defendants' motion is supported by an affidavit from Col. Nail. Nail testified that, at about 5:49 p.m. on the date at issue, he saw Plaintiff kicking his cell bars and screaming, "Spray me! Spray me! Let's do this!" Nail stated that he was dealing with another offender in the adjacent cell at the time, and the noise created by Plaintiff created an unsafe environment by making it difficult for the officers in the area to monitor the tiers.

Nail testified that he gave Plaintiff a direct verbal order to cease his behavior, but Plaintiff continued kicking his cell bars and screaming. Nail gave Plaintiff several more direct orders to cease his behavior or, he warned, a chemical agent would be used. Plaintiff continued his actions, so Nail "administered a short 1-2 second burst of chemical agent to the head and chest area of [Plaintiff]." Plaintiff then ceased his actions, and Nail exited the tier. He heard that Plaintiff was later involved in a separate incident.

Major Jeremy Wallace also submitted an affidavit in support of the motion for summary judgment. He was involved in the second incident, which happened at about 5:55 p.m., just a few minutes after Col. Nail left the tier. Wallace testified that Plaintiff and another inmate were causing a disturbance that could clearly be heard from the lobby area of the N4 housing unit. Wallace stated that this created an unsafe environment because it made it difficult for correctional officers to monitor the tiers. He responded by giving

both inmates several direct orders to cease their actions, and they were eventually warned that a chemical agent would be used if they did not stop. Wallace testified that both offenders continued their actions, so he "administered a 1-2 second burst of chemical agent to the head and back area of [Plaintiff]" and similar burst to the head and face area of the other inmate.

Wallace testified that both offenders then complied with his orders to cease causing a disturbance. They were restrained, removed from their cells, and taken to the lobby area for examination by a nurse. They were offered a shower, but both refused. They were also offered a shower every 30 minutes for the next two hours, but they both continued to refuse a shower. The two cells involved were cleaned and sanitized, and the inmates were returned to the tier, but both were placed in other cells on 24-hour strip cell status to deescalate the situation.

Both Nail and Wallace testified that they used only the minimal amount of force necessary to regain control of the situation, and they did not use the chemical agent to cause harm to Plaintiff. Nail stated that he did not use a body camera because of the immediate need to restore order. Wallace stated that no body camera was available to him because they were being used by other officers in the housing unit, and he felt that the disturbance needed to the quelled as soon as possible. A disciplinary report was issued to Plaintiff for causing a disturbance, and he pleaded guilty to the charge.

Warden Jerry Goodwin offered an affidavit in support of the motion. He testified that he was not personally involved in the use of force, but he did review a use of force

report and conclude that only the amount of force necessary was used to bring the situation under control and bring Plaintiff into compliance with direct commands.

### C. Lack of Opposition

It appears that Plaintiff was transferred to another prison at about the time the motion for summary judgment was filed. To ensure that Plaintiff was afforded a fair opportunity to respond to the motion, the court directed the clerk of court to mail notices of the motion to Plaintiff at both his DWCC address and to the Louisiana State Penitentiary, where DOC records indicated Plaintiff was then housed. Plaintiff was directed to immediately contact the court in writing and advise of his current address. He was told that if he did so, the court would allow him a reasonable opportunity to respond to the motion. The court took the additional step of ordering Defendants to mail another copy of their motion to Plaintiff at the Louisiana State Penitentiary, and defense counsel did so. The items that the court mailed to Plaintiff have not been returned, but Plaintiff has not filed any response to the order or the motion. Docs. 41 & 42.

### D. Analysis

A convicted inmate's claim of excessive force is governed by the Eighth Amendment. The inmate must establish that the force was not applied in a good faith effort to maintain or restore discipline but was inflicted maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995 (1992). "The factors to be looked to include (1) the extent of the injury suffered, (2) the need for the application of force, (3) the relationship between the need and the amount of force used, (4) the threat reasonably

perceived by the responsible official, and (5) any efforts made to temper the severity of a forceful response. Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999).

The Hudson standard applies with equal force to claims that prison officials used a chemical agent on an inmate. Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx. 327 (5th Cir. 2004). Each case is judged on its own facts, after considering the non-exclusive factors listed above. Baldwin, 137 F.3d at 839.

The undisputed summary judgment evidence indicates that there was a need for the application of some force because several direct orders were disregarded, and the disturbance created by Plaintiff prevented correctional officers from properly monitoring the housing unit. Such loud outbursts can be used to conceal or distract from physical attacks, the distribution, concealment, or use of contraband, or other misbehavior elsewhere in the unit. The officers made multiple efforts to avoid the use of force, but Plaintiff refused to comply. Only a one or two second burst of chemical spray was employed by each officer, and efforts were made to temper the effects of the chemical agent by immediately offering Plaintiff an examination by medical staff and the opportunity for a shower.

Chemical spray applied to the face of an inmate for no reason but a desire to harm states a claim under Hudson. McCoy v. Alamu, 950 F.3d 226, 231 (5th Cir. 2020). But that is not what the summary judgment record depicts in this case. A consideration of the Hudson factors shows that the relevant facts do not amount to an Eighth Amendment violation. The force used was applied in a good faith effort to maintain or restore discipline, and it was not inflicted maliciously and sadistically to cause harm. Accordingly, Lonnie Nail and Jeremy Wallace are entitled to summary judgment.

**Supervisory Officials**

Plaintiff also named as defendants Warden Jerry Goodwin and DOC Secretary James LeBlanc for their alleged failure to prevent the use of force or take appropriate corrective action after the event. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Thus, a prisoner must show that a warden or other supervisor was personally involved in the acts that deprived the prisoner of his constitutional rights. Thompson v. Upshire County, 245 F.3d 447, 459 (5th Cir. 2001). Warden Goodwin testified that he was not personally present in the housing unit on the day of these events and did not witness either incident. There is no allegation that DOC Secretary James LeBlanc was personally involved in any way.

Neither Goodwin nor LeBlanc may be held liable under respondeat superior or vicarious liability, which does not apply to claims brought under 42 U.S.C. § 1983. In any event, the lack of an underlying constitutional violation precludes any ability to impose supervisory liability on either man. Baughman v. Hickman, 935 F.3d 302, 311 (5th Cir. 2019); Whitley v. Hanna, 726 F.3d 631, 648 (5th Cir. 2013) ("All of [the plaintiff's] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation.").

Plaintiff alleges that the supervisors did not adequately discipline Nail and Wallace after the incident. First, the evidence does not support a need for discipline. Warden

Goodwin testified that he investigated the incident and found the use of force justified under the circumstances. Next, a "policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens." Piotrowski v. City of Houston, 237 F.3d 567, 581 (5th Cir. 2001). But there is no evidence or even specific allegation of such a policy and, based on the findings above, it could not have been the cause of any constitutional violation in this case. Warden Goodwin and Secretary LeBlanc are entitled to summary judgment.

**Department of Public Safety & Corrections**

Plaintiff named as a defendant the Louisiana Department of Public Safety & Corrections. The Department has Eleventh Amendment immunity from Section 1983 suits brought against it in federal court. Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312 (5th Cir. 1999). A dismissal based on Eleventh Amendment immunity is without prejudice. Anderson v. Jackson State University, 675 Fed. Appx. 461, 464 (5th Cir. 2017), citing United States v. Tex. Tech Univ., 171 F.3d 279, 286 n.9 (5th Cir. 1999).

**Conclusion**

Defendants have demonstrated that they are entitle to summary judgment based on the merits and Eleventh Amendment immunity. Their motion also asserted the defenses of qualified immunity and failure to exhaust (with respect to some claims), but there is no need to address those defenses given the recommended disposition. A judgment should be entered that dismisses this civil action.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 38) be granted and that all claims against Col. Lonnie Nail, Major Jeremy Wallace, Warden Jerry Goodwin, and Secretary James LeBlanc be dismissed with prejudice, and all claims against the Louisiana Department of Public Safety & Corrections be dismissed without prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of October, 2020.



Mark L. Hornsby
U.S. Magistrate Judge